IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SURGE BUSY BEE HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:19-cv-127-L |
| | § | |
| GRZEGORZ WISZNIEWSKI AND | § | |
| FATIMA WISZNIEWSKI, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action for damages resulting from an alleged breach of contract is Plaintiff Surge Busy Bee Holdings, LLC's Motion to Remand to State Court. Mot. Remand (ECF No. 30). For the reasons stated, the Court should GRANT Plaintiff's Motion and remand this case to state court.

**Background**

Plaintiff filed its Original Petition in the 134th District Court of Dallas County, Texas, on November 13, 2018. Notice App. 7 (ECF No. 1-3). Defendants Grzegorz Wiszniewski and Fatima Wiszniewski were served on December 22, 2018, and timely removed this case to federal court on January 16, 2019, alleging complete diversity of citizenship exists between the parties. *Id.* 19-20; Notice 2 (ECF No. 1). Specifically, in their Notice of Removal, Defendants alleged that they are "residents" of New York and that Plaintiff is a Delaware corporation with its

1

principal place of business in Texas. Notice 2; Mot. Remand 1. But Plaintiff is a limited liability company and not a corporation. Mot. Remand 2. Its sole member is Surge Busy Bee Partners, LP (the "Partnership"), an entity that was formed in connection with Plaintiff's acquisition of three cleaning-services companies from Defendants. *Id.* Further, Plaintiff contends, Defendant Mr. Wiszniewski is a limited partner of the Partnership, and he has been a limited partner since October 15, 2018. *Id.* Accordingly, Plaintiff moves to remand this case to state court, arguing that the parties are not diverse because Mr. Wiszniewski is a citizen of New York and, by virtue of his being a limited partner of Surge Busy Bee Partners, LP, the Partnership is a citizen of New York for diversity purposes. And because the Partnership is a citizen of New York, then Plaintiff is also a citizen of New York, and there is not complete diversity of citizenship among the parties. *Id.* Defendants filed a "Motion for Leave to Conduct Jurisdictional Discovery and Response to Plaintiff's Motion to Remand Subject to Defendants' Special Appearance," and Plaintiff filed a Reply. Resp. (ECF No. 33); Reply (ECF No. 38). Plaintiff's Motion to Remand is, therefore, fully briefed and ripe for determination.

**Preliminary Matters**

In the same document as their Response to Plaintiff's Motion to Remand, Defendants included a "Motion for Leave to Conduct Jurisdictional Discovery," requesting the Court allow Defendants discovery to determine (1) "whether Mr. Wiszniewski's purported limited partnership interest took hold before this lawsuit was filed or removed, if at all," and (2) "the citizenship of the Partnership's

2

remaining partners." Resp. 10; Mot. Leave Disc. (ECF No. 35). The Court finds Defendants have not demonstrated the necessity of jurisdictional discovery and DENIES Defendants' Motion for Limited Discovery.

"[T]he party opposing dismissal [or remand] and requesting discovery . . . bear[s] the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (citing *Freeman v. United States,* 556 F.3d 326, 341-42 (5th Cir. 2009)). The party requesting discovery is "'not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" *Id.* (quoting *Freeman*, 556 F.3d at 342). Limited jurisdictional discovery in a removed case, however, may be appropriate when the parties dispute whether complete diversity exists. *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 2013 WL 3328694, at *4 (N.D. Tex. July 2, 2013) (Lindsay, J.) (citing *In re MPF Holdings U.S. LLC,* 701 F.3d 449, 457 (5th Cir. 2012)).

In *Murchison*, after Nuance removed the case, the Court instructed Nuance to file an amended notice of removal setting forth all plaintiffs' citizenship. *Id.* at *1. Nuance asserted, however, that it could only establish the citizenship of the Texas general partners, and not the Texas limited partners, because that information was not publicly available, and the plaintiffs' counsel refused to provide it. *Id.* Accordingly, Nuance asked the Court for limited jurisdictional discovery to determine whether complete diversity existed. *Id.* The Court held limited jurisdictional discovery was appropriate under those circumstances

3

because: the parties disputed whether complete diversity existed; the plaintiffs filed no motion to remand or "statement acknowledging the court's subject matter jurisdiction"; and the plaintiffs "refused to engage in voluntary discovery and provide information in [their] possession and in [their] control." *Id*. at *4. The Court expressed skepticism as to why a party who truly believed that diversity of citizenship was lacking would not file a motion to remand. *Id*.

Defendants argue the facts of this case are similar to *Murchison*, and, therefore, the Court should grant limited jurisdictional discovery. Resp. 4. But, here, though the parties dispute whether complete diversity existed at the time Plaintiff filed its lawsuit, Plaintiff filed a Motion to Remand and has not refused to participate in voluntary discovery. In fact, "Defendants were provided copies of Mr. Wiszniewski's subscription agreement, the Partnership Agreement, a partner schedule, and the email chain evidencing [Mr. Wiszniewski's acquisition of his limited-partnership interest]," which Defendants included in their sealed appendix in support of their Motion to Conduct Jurisdictional Discovery. Reply 10; *see* Defs.' App (ECF No. 34). The Court, therefore, does not find *Murchison* supports granting limited jurisdictional discovery in this case.

Though the parties dispute whether diversity exists, it is not because they disagree as to whether Mr. Wiszniewski is a citizen of New York—instead, the parties dispute whether Mr. Wiszniewski was a limited partner of the Partnership, Plaintiff's sole member, at the time suit was filed. Resp. 7. Defendants admit "should [Mr. Wiszniewski's] citizenship indirectly determine the citizenship of

4

Plaintiff, then diversity and federal subject matter jurisdiction would be destroyed." *Id*. Specifically, Defendants "question whether [Mr. Wiszniewski's] [limited-partnership] interest was perfected" when Plaintiff filed suit. *Id*. Defendants contend there is some "irregularity" with respect to the date Mr. Wiszniewski became a limited partner since "[b]efore filing its Motion [to Remand], Plaintiff's counsel represented to Defendants' counsel that Mr. Wiszniewski 'was admitted to the LP at the time of closing the transaction in November 2017,'" but then later included a one-page affidavit with its Motion "alleg[ing] that Mr. Wiszniewski became a limited partner on October 15, 2018." *Id*. Either of these dates, however, occurred before Plaintiff filed its Original Petition in state court on November 13, 2018. Notice App. 7.

Still, Defendants argue Mr. Wiszniewski's partnership interest was not perfected because there is no evidence that all the steps required by the operative agreements were undertaken before this lawsuit was filed or removed, if at all. Resp. 8. But, as stated, Plaintiff provided Defendants with "copies of Mr. Wiszniewski's subscription agreement, the Partnership Agreement, a partner schedule, and the email chain evidencing [Mr. Wiszniewski's acquisition of his limited-partnership interest]," and Defendants included these documents in their sealed appendix in support of their Motion to Conduct Jurisdictional Discovery. Reply 10; *see* Defs.' App. The Court finds these documents sufficient to make the legal determination whether Mr. Wiszniewski was a limited partner at the time Plaintiff initiated its lawsuit. And because Mr. Wiszniewski's status as a limited

5

partner would destroy complete diversity, the Court need not consider the other limited partners' citizenship at this juncture. Accordingly, the Court finds Defendants have not met their burden to demonstrate the necessity of discovery and DENIES Defendants' request for jurisdictional discovery.

## Legal Standard

A defendant may remove an action filed in state court to federal court if it could have originally been filed in federal court. 28 U.S.C. § 1441(a). But federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Scalia, J.) (citations omitted). Generally, unless otherwise provided by statute, federal courts only have jurisdiction over cases involving (1) a federal question arising under the Constitution, a federal law, or a treaty, or where there exists (2) complete diversity of citizenship between adverse parties, and the case satisfies the amount in controversy. *See* 28 U.S.C. §§ 1331, 1332. In diversity cases, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). If no amount of damages has been alleged in the state-court petition, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (citations omitted). "'When removal is based on diversity of citizenship, diversity must exist at the time of removal.'" *Richey v. Wal-Mart Stores, Inc.*, 390

F. App'x 375, 377 (5th Cir. 2010) (per curiam) (quoting *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (per curiam)) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("[The Defendant] must prove that federal jurisdiction existed at the time of removal, or, at the very least, have alleged facts prior to the entry of judgment in this case that establish federal subject-matter jurisdiction.")).

"Federal courts have . . . a continuing obligation to examine the basis for their jurisdiction," and they may *sua sponte* raise the issue of subject-matter jurisdiction at any time. *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990) (citations omitted); *see also EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 467 (5th Cir. 2009) (citation omitted) (noting that, even without an objection to subject-matter jurisdiction, a court must consider *sua sponte* whether jurisdiction is proper). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Similarly, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [of a removed case], the case shall be remanded." 28 U.S.C. § 1447(c); *see also Exxon Mobil Corp. v. Starr Indem. & Liab. Ins. Co.*, 716 F. App'x 349, 350-51 (5th Cir. 2018) (per curiam). Nonetheless, "a party's post-removal change in citizenship [cannot] oust the court of jurisdiction." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 1556961, at *2 (N.D. Tex. May 30, 2007) (Fitzwater, J.) (citing *IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 157 (5th Cir. Unit B 1982)). However, any doubts concerning removal must be

7

resolved against removal and in favor of remand. *Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 508 (N.D. Tex. 2004) (quotation marks and citations omitted).

## Analysis

The Court lacks subject-matter jurisdiction in this case because the parties are not diverse. Diversity jurisdiction requires each plaintiff to be diverse from each defendant. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988) (citing *Strawbridge v. Curtiss,* 7 U.S. 267, 267 (1806), *overruled in part by Louisville, C. & C.R. Co. v. Letson*, 43 U.S. 497 (1844)) ("If the case involves more than one plaintiff and more than one defendant, the court must be certain that all plaintiffs have a different citizenship from all defendants."). "[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (citations omitted). And "[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners." *Id*. at 1079 (citing *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96 (1990) (holding that the citizenship of an unincorporated entity or association, such as a partnership, is based upon the citizenship of each of its members)).

Here, Defendants alleged in their Notice of Removal that they are "residents of the State of New York" and that "Plaintiff is a Delaware Corporation with its principal place of business in Texas." Notice 2. But, for the purpose of determining diversity jurisdiction, "[c]itizenship and residency are not synonymous." *Murchison*, 2013 WL 3328694, at *2 (internal quotation marks omitted) (quoting

8

*Parker v. Overman,* 59 U.S. 137, 141 (1855)). Nonetheless, Mr. Wiszniewski later states that he is a citizen of New York. Resp. 7.[1]

With respect to Plaintiff, Surge Busy Bee Holdings, LLC is a limited liability company and not a corporation. Therefore, Plaintiff's citizenship is determined not by its principal place of business or place of incorporation, but by the citizenship of each of its members. *See Harvey*, 542 F.3d at 1080. The Partnership, Surge Busy Bee Partners, LP, is Plaintiff's sole member, Decl. Sharp 1 ¶ 4 (ECF No. 31-1), and the Partnership's citizenship is determined by the citizenship of each of its partners. *See Harvey*, 542 F.3d at 1079. Lewis A. Sharp, Surge Busy Bee Holdings LLC's managing member, affirms Mr. Wiszniewski has been a limited partner of Surge Busy Bee Partners, LP since October 15, 2018. Decl. Sharp 2 ¶¶ 2, 5. Because Mr. Wiszniewski is a limited partner of Surge Busy Bee Partners, LP, the Partnership is a citizen of New York. And because the Partnership is a member of Plaintiff, Surge Busy Bee Holdings, LLC, Plaintiff is also a citizen of New York. Plaintiff filed its Original Petition on November 13, 2018. Notice App. 7. Therefore, Plaintiff and Defendant Mr. Wiszniewski both are—and have been—citizens of New York since this lawsuit's inception. Accordingly, the parties are not diverse, and the Court should remand this case to state court.

---

[1] Because the Court determines remand is appropriate since Mr. Wiszniewski's status as a limited partner destroys complete diversity, the Court does not address Defendants' insufficient allegations with respect to Mrs. Wiszniewski's citizenship.

Defendants, however, "dispute whether Grzegorz Wiszniewski was a limited partner of the Partnership at the time suit was filed," because his "interest was not perfected." Resp. 7. The Partnership originally was formed to fund the purchase of the cleaning-services companies from Defendants. *See* Reply 4. Mr. Wiszniewski and other investors made capital contributions to the Partnership when Plaintiff purchased the companies in exchange for LP Units, or ownership units in the Partnership issued to limited partners. *Id.* The Partnership issued 2,000 LP Units in total, apportioned among the investors according to their contributions. *Id.* While the other investors were issued their LP Units and admitted as limited partners at the time of their capital contributions, Mr. Wiszniewski instead took a convertible promissory note (the "Note"), equivalent to his share of the LP Units issued, for tax purposes. *Id.* 5; Note (ECF No. 38-1). The Note permitted Mr. Wiszniewski to either hold it to term and be paid back the principal plus interest or convert it into LP Units and become a limited partner in the Partnership. Reply 5; Note. On October 15, 2018 Mr. Wiszniewski sent an email to Tom Beauchamp, managing member of the Partnership's general partner (Surge Busy Bee Partners GP, LLC), and Lewis Sharp, Plaintiff's managing member, stating "I would [sic] to exercise my conversion rights under the convertible promissory note Section 2(c) of the convertible note." Defs.' App. 91. As a result of this email, Plaintiff argues, Mr. Wiszniewski converted the Note into LP Units and became a limited partner in the Partnership. S*ee* Reply 5.

Defendants argue "there is no evidence that all the steps required by the Partnership Agreement and the Subscription Agreement were undertaken," to add an additional limited partner. Resp. 8. Defendants assert the required steps included:

1. A written notice of the holder's election to cause the conversion of the promissory note. *See* Exhibit C, Subscription Agreement Section 2(d). [Defs.' App. 68.]

2. The delivery and surrender of the promissory note, which must then be endorsed. *See* Exhibit C, Subscription Agreement Section 2(c) and (d). [Defs.' App. 67-68.]

3. Cancellation of the promissory note on the Partnership's books and records. *See* Exhibit C, Subscription Agreement Section 2(d). [Defs.' App. 68.]

4. Listing of the limited partner in the Partnership's books and records. *See* Exhibit B, Partnership Agreement Section 3.02(b)(ii). [Defs.' App. 30.]

5. Inclusion of the limited partner's name, capital contribution, and number and type of units on the Partner Schedule. *See* Exhibit B, Partnership Agreement Section 3.01(a). Note that amendment of the Partnership Schedule is necessary to admit additional partners: "*Upon the amendment of the Partner Schedule*, such Person shall be deemed to have been admitted as a Limited Partner . . ." *See id.* at 3.02(b)(ii) (emphasis added). [Defs.' App. 30.]

6. The execution and delivery of the Subscription Agreement. *See id.* [Defs.' App. 30.]

Resp. 8-9. Defendants concede that "elements one and six" may be satisfied as a result of Mr. Wiszniewski's "electronic written notice of his intent to convert the

11

promissory note" and the electronically delivered Subscription Agreement. *Id.* 9. However, they contend that there is insufficient evidence to determine whether elements two through five have been satisfied. Concerning element two, they assert that "assuming an electronic surrender of the promissory note is sufficient, Mr. Wiszniewski never physically delivered it and Defendants do not know whether the Partnership properly endorsed it." *Id.* With respect to element three, "Defendants have not been provided nor have they seen any books and records establishing that Mr. Wiszniewski's promissory note was canceled." *Id.* "Regarding element four, Defendants have seen only the undated Partner Schedule and no other books or records listing [Mr. Wiszniewski] as a limited partner." *Id.* And concerning element five, "the Partner Schedule that Plaintiff very recently provided . . . does *not* establish when element five [requiring amendment of the Partnership Schedule to add a new partner] was satisfied." *Id.*

The Court will address Defendants' arguments with respect to each element. Concerning the first element, whether Mr. Wiszniewski gave written notice of his "election to cause the conversion of [his] promissory note," the Court finds his October 15, 2018 email to Tom Beauchamp, managing member of the Partnership's general partner, and Lewis Sharp, Plaintiff's managing member, stating "I would [sic] to exercise my conversion rights under the convertible promissory note Section 2(c) of the convertible note," sufficient indication that Mr. Wiszniewski elected, in writing, to convert his promissory Note. Defs.' App. 91; Resp. 7. Section 2(d) of the Subscription Agreement, which Defendants cite, does

12

not place any restrictions on the form of written notice required to convert the promissory Note. *See* Defs.' App. 68. In fact, § 2 of the Subscription Agreement concerns "Representations and Warranties of the Investor" to "induce the Partnership to accept [the Investor's] subscription," and does not detail requirements for converting the Note. *Id.* 67-70.

With respect to the second element, the Court finds Mr. Wiszniewski properly surrendered the convertible promissory Note and there is no evidence the Partnership did not properly endorse it. In support of their argument, Defendants cite §§ 2(c) and (d) of the Subscription Agreement, which, as previously explained, are not instructive here. But Plaintiff attached a copy of the Note to its reply, which provides,

> Upon a conversion of this Note into Conversion Units pursuant to Section 2(c), the Holder shall (i) surrender this Note, duly endorsed, to the Partnership for cancellation on the Partnership's books and records and (ii) execute and deliver to the Partnership a counterpart signature page or joinder to the Partnership Agreement . . . and any other documents . . . requested by the Partnership.

Note 2 ¶ 2(d). The Note, however, next states,

> Upon any conversion of this Note in accordance with the terms and conditions of Section 2(c), the Partnership shall, automatically and without any further action being required by any party, be released, and the Holder hereby agrees that it shall be deemed to have released the Partnership, from all of the Partnership's obligations and liabilities under this Note.

*Id.* In response to Mr. Wiszniewski's election to convert the Note, Tom Beauchamp executed the Subscription Agreement that Mr. Wiszniewski signed at closing to accept it on behalf of the general partner and asked Mr. Wiszniewski to "please state that the note is now surrendered given the conversion." Defs.' App. 88-89. Mr. Wiszniewski replied on October 16, 2018, "Based on your acceptance of the conversion of my convertible promissory note into LP units as per the subscription agreement, I surrender my convertible promissory note." *Id.* 87. The Court finds Mr. Wiszniewski properly surrendered the Note, and the Note's terms do not require it to be physically surrendered or delivered. Further, no evidence indicates the Partnership did not properly endorse the Note.

Concerning the third element, Defendants contend Mr. Wiszniewski's partnership interest was not perfected because they "have not been provided nor have they seen any books and records establishing that Mr. Wiszniewski's promissory note was canceled." However, the Note provides,

> To the extent required to effectuate the provisions of Section 2(c) or this Section 2(d), the Holder hereby names and appoints Surge Busy Bee Partners GP LLC (the "General Partner") as the Holder's attorney-in fact, and gives the General Partner full power and authority, in place of the Holder, to complete, execute, deliver, file and/or record, on behalf of the Holder, any and all documents, instruments, certificates, endorsements, powers, assignments, *cancellations* and agreements that the Holder is obligated to execute and deliver in connection with any conversion of this Note.

Note 2 ¶ 2(d) (emphasis added). Accordingly, in signing the Note, Mr. Wiszniewski authorized the general partner to carry out any cancelation in connection with

converting the Note on his behalf. Defendants have raised no evidence indicating the Note was not canceled.

Regarding the fourth and fifth elements, allegedly requiring the limited partner be listed in the Partnership's books and records and included on the Partner Schedule, Defendants argue they have only seen an undated Partner Schedule and no other books or records listing Mr. Wiszniewski as a limited partner and do not know when the Partner Schedule was amended to add Mr. Wiszniewski. In support of their argument that "amendment of the Partnership Schedule is necessary to admit additional partners," Defendants cite § 3.02(b)(ii) of the Partnership Agreement. Section 3.02 of the Partnership Agreement, titled "Issuance of Additional Units: Additional Limited Partners," gives the general partner "the right to cause the Partnership to authorize and issue or sell . . . (i) additional Units . . . and (ii) obligations, evidences of indebtedness or other securities or interests in each case convertible into or exchangeable for Units." Defs.' App. 30 (quoting Partnership Agreement § 3.02(a)). Section 3.02(b) details the procedure for "a Person to be admitted as a Limited Partner with respect to an Additional Unit," and indeed provides "[u]pon the amendment of the Partner Schedule, such Person shall be deemed to have been admitted as a Limited Partner and shall be listed on the books and records of the Partnership." *Id.* (quoting Partnership Agreement § 3.02(b)). Section 3.02, however, governs situations where the Partnership wishes to issue additional partnership units, not conversion of a promissory note into units already allocated. In the parties' email exchange,

15

attorney Benjamin Goldburd informed Tom Beauchamp that conversion of the Note "would require an amendment of [the] Surge Busy Bee Partners LP Limited Partner Agreement and Capital Table." *Id.* 90. Beauchamp responded with the "subscription doc that satisfies [that obligation]," explaining that "[Mr. Wiszniewski] filled out [the] subscription doc at closing but it wasn't accepted yet by [the Partnership] until at conversion. So [he] just signed it [sic] accepted and put in the units and ownership percentage [Mr. Wisniewski] has." *Id.* 89.

Indeed, the Partnership Agreement permits the general partner to execute any instrument necessary to admit a partner as a limited partner. Section 2.06 of the Partnership Agreement, "Power of Attorney," establishes that

> [e]ach Limited Partner . . . irrevocably . . . appoint[s] the General Partner and its members, managers and officers . . . the true and lawful attorney-in-fact and agent of such Partner, to execute, acknowledge, verify, swear to, deliver, record and file . . . all instruments, documents, and certificates that may . . . be required by the laws of . . . any . . . jurisdiction in which the Partnership conducts or plans to conduct business . . . to effectuate . . . the . . . activities of the Partnership, including the power and authority to execute, verify, swear to, acknowledge, deliver, record and file: . . . (ii) all certificates and other instruments, including any amendments to this Agreement, the Subscription Agreement or to the Certificate of Limited Partnership, that the General Partner determines to be appropriate to (A) form, qualify or continue the Partnership . . . and (B) *admit such Partner as a Limited Partner in the Partnership*[.]

*Id.* 28 (emphasis added) (quoting Partnership Agreement § 2.06(a)(ii)). And the Note itself contains a similar provision, as discussed above, giving the general partner the "full power and authority" to execute any document on the Note-

16

holder's behalf that the "Holder is obligated to execute and deliver in connection with any conversion of [the] Note." Note 2 ¶ 2(d). Accordingly, Tom Beauchamp, acting on behalf of the general partner, had the authority to execute the Subscription Agreement in satisfaction of any requirement to amend the Partnership Agreement.

Last, concerning the sixth element, "[t]he execution and delivery of the Subscription Agreement," Defendants concede that they "understand a Subscription Agreement was electronically delivered . . . although there are some execution and date irregularities in the Subscription Agreement's signature pages." In support of this element, Defendants again cite § 3.02(b)(ii) of the Partnership Agreement. Resp. 9. This section is not instructive here, and Defendants have not produced any evidence indicating Plaintiff's electronic delivery of the Subscription Agreement was insufficient. Accordingly, the Court finds Defendants have not produced any evidence indicating Mr. Wiszniewski's partnership interest was not perfected.

Even if Plaintiff satisfied all of these elements, Defendants argue the Partnership Agreement provides that amending the Partner Schedule is a prerequisite for adding a limited partner and that "if the Partner schedule was not amended to add Mr. Wiszniewski until August 2019, then Mr. Wiszniewski could not have been added as a limited partner, if at all, until August 2019." *Id*. This argument fails, however—per the parties' October 2018 email exchange, Tom Beauchamp indicated he executed the Subscription Agreement on behalf of the

17

general partner satisfying any requirement to amend the Partnership Agreement, and the power-of-attorney provisions in § 2.06 of the Partnership Agreement and paragraph 2(d) of the Note empower the general partner to execute the instruments necessary to admit a limited partner to the Partnership and effectuate conversion of the Note, as discussed above. Accordingly, the Court finds Defendant Mr. Wiszniewski converted the Note and became a limited partner of Surge Busy Bee Partners, LP in October 2018, before Plaintiff filed its lawsuit. Therefore, Plaintiff Surge Busy Bee Holdings, LLC and Defendant Mr. Wiszniewski are both citizens of New York and were both citizens of New York at the time of removal. The Court, thus, lacks subject-matter jurisdiction and should remand this case to state court.

## **RECOMMENDATION**

For the foregoing reasons, the Court should GRANT Plaintiff Surge Busy Bee Holdings, LLC's Motion to Remand to State Court (ECF No. 30) and remand this case to state court.

**SO RECOMMENDED.**

February 24, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).