IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SURGE BUSY BEE HOLDINGS, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-127-L** |
| | § | |
| **GRZEGORZ WISZNIEWSKI and** | § | |
| **FATIMA WISZNIEWSKI,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On February 24, 2020, the Findings, Conclusions and Recommendation of the United States Magistrate Judge (Doc. 43) was entered, recommending that the court grant Plaintiff's Motion to Remand (Doc. 30), filed August 16, 2019, and remand this action to state court for lack of subject matter jurisdiction. The magistrate judge also denied Defendants' Motion to Conduct Jurisdictional Discovery (Doc. 33), filed September 6, 2019, which was filed in response to the Motion to Remand. As the magistrate judge set forth her findings, conclusions, and recommendation regarding the Motion to Remand in the same Report as her ruling on the Motion to Conduct Jurisdictional Discovery, the court refers collectively to the document entered by the magistrate judge on both motions as "the Report." Defendants filed objections to the magistrate judge's recommendation regarding the Motion to Remand, as well as the magistrate judge's denial of their request to conduct jurisdictional discovery. On April 6, 2020, Plaintiff responded to Defendants objections.[1] For the

---

[1] The court only considers Plaintiff's response to the extent timely under this district's Local Civil Rules that provide responses to objections to dispositive matters referred to the magistrate judge must be filed within 14 days of the objections and responses to objections to nondispositive matters to the magistrate judge must be filed within 21 days of the objections. *See* L.R. 71.1, 72.1.

reasons that follow, the court **accepts, as modified and supplemented by this order,** the findings and conclusions of the magistrate judge; **overrules** Defendants' objections; **affirms** the denial of Defendants' Motion to Conduct Jurisdictional Discovery (Doc. 33); and **grants** Plaintiff's Motion to Remand (Doc. 30).

## I.    Factual and Procedural Background

On November 13, 2019, Surge Busy Bee Holdings, LLC ("Surge" or "Plaintiff") filed this action in the 134th Judicial District Court of Dallas County, Texas, against Grzegorz Wiszniewski ("Mr. Wiszniewski") and Fatima Wiszniewski (collectively, "Defendants"), seeking a declaratory judgment regarding the parties' respective rights and obligations under a Stock Purchase Agreement ("SPA"), dated November 16, 2017.  Defendants removed the action to federal court on January 16, 2019. On August 16, 2019, Plaintiff moved to remand the action to state court, on the ground that complete diversity did not exist between the parties when the case was removed to federal court because Mr. Wiszniewski is a citizen of New York and has been a limited partner of Surge Busy Bee LP ("Surge LP" or "the Partnership"), Surge's sole member, since October 15, 2018.[2]

On September 6, 2019, Defendants filed their Motion to Conduct Jurisdictional Discovery and Response to Plaintiff's Motion to Remand (Doc. 33), contending that they should be allowed

---

[2] A partnership's citizenship is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). The citizenship of a limited liability company "is determined by the citizenship of all of its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  As noted in the Report, when removal is based on diversity of citizenship, diversity must exist "both at the time of the filing of the suit in state court and at the time of removal." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993) (citations omitted); *see also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("[The Defendant] must prove that federal jurisdiction existed at the time of removal, or, at the very least, have alleged facts prior to the entry of judgment in this case that establish federal subject-matter jurisdiction.") (citation omitted).  Thus, if Mr. Wiszniewski was a limited partner of Surge LP (Plaintiff's sole member) when Defendants removed the case to federal court, his New York citizenship would be imputed to Surge LP and, in turn, to Plaintiff as a limited liability company.  This would result in citizens of New York on both sides of the case and destroy diversity.

to conduct jurisdictional discovery regarding Mr. Wiszniewski's status as a limited partner of Surge LP and the citizenship of Surge LP's other partners before the court rules on the Motion to Remand. Defendants concede that Mr. Wiszniewski is a citizen of New York, even though their Notice of Removal alleges only that both Defendants are residents of New York. Defendants recognize that they have the burden, as the removing parties, to establish subject matter jurisdiction, but they maintain that the information needed to do this is in Plaintiff's possession. Defendants assert that the circumstances in this case are nearly identical to those in *Murchison Capital Partners, L.P. v. Nuance Communications, Inc*., 3:12-CV-4746-L, 2013 WL 3328694, at *4 (N.D. Tex. July 2, 2013).

The court referred Plaintiff's Motion to Remand to the magistrate judge for proposed findings and recommendations and referred Defendants' Motion to Conduct Jurisdictional Discovery to the magistrate judge for determination. On February 24, 2020, the magistrate judge denied Defendants' request to conduct jurisdictional discovery. She also recommended that the court grant Plaintiff's Motion to Remand (Doc. 30) and remand this action to state court for lack of subject matter jurisdiction, after determining that there were New York citizens on both sides of the case as a result of Mr. Wiszniewski being a limited partner of Surge LP.

The magistrate judge disagreed that the circumstances in this case were sufficiently similar to those in *Murchison* to warrant jurisdictional discovery because Plaintiff moved to remand the action and had not refused to engage in voluntary discovery. Report 4. The magistrate judge also disagreed that the alleged "irregularity" between the November 2017 date Plaintiff's counsel allegedly represented that Mr. Wiszniewski became a limited partner and the October 2018 date in the affidavit submitted by Plaintiff in support of its Motion to Remand, was a basis for allowing

Defendants to conduct jurisdictional discovery, as both of these dates predated the date this case was removed to federal court.

Regarding Plaintiff's Motion to Remand, the magistrate judge noted Defendants' contention that the Subscription Agreement executed by Mr. Wiszniewski and Surge LP's Partnership Agreement ("Partnership Agreement") require completion of six specific steps for the admission of limited partners. Her analysis, however, focused on the second, third, fourth, and fifth steps identified by Defendants in light of their acknowledgment that steps one and six may be satisfied. Report 11-12. In sum, the magistrate judge determined that all requirements for admission of Mr. Wiszniewski as a limited partner of Surge LP were satisfied in October 2018. *Id*. at 17-18. In reaching this determination, she rejected Defendants' contentions that certain requirements were mandated by the Subscription Agreement and section 3.02 of the Partnership Agreement. The magistrate judge also considered whether the Convertible Promissory Note ("Note") executed by Mr. Wiszniewski and Surge LP included any admission requirements for partners, even though Defendants did not argue that the Note contained any partnership admission requirements.

In addition, the magistrate judge agreed with Plaintiff that the Partnership Agreement, as well as the Note, gave the general partner of the Partnership the requisite authority and discretion to admit Mr. Wiszniewski as a limited partner in the manner reflected in the October 2018 e-mail exchange between Mr. Wiszniewski, Tom Beauchamp ("Mr. Beauchamp"), Lewis Sharp ("Mr. Sharp"),[3] and Mr. Wiszniewski's attorney. Based on the same reasoning, she rejected Defendants' contention that amendment of the Surge LP's Partner Schedule was an absolute prerequisite to Mr. Wiszniewski becoming a limited partner of Surge LP. The magistrate judge, therefore, disagreed

---

[3] Mr. Beauchamp is the managing member of the Partnership's general partner, Surge Busy Bee Partners GP, LLC. Mr. Sharp is Surge LP's managing member.

with Defendants' argument that "Mr. Wiszniewski could not have been added as a limited partner, if at all, until August 2019," and concluded that remand was required given the lack of diversity between the parties:

> Mr. Wiszniewski converted the Note and became a limited partner of Surge Busy Bee Partners, LP in October 2018, before Plaintiff filed its lawsuit. Therefore, Plaintiff Surge Busy Bee Holdings, LLC and Defendant Mr. Wiszniewski are both citizens of New York and were both citizens of New York at the time of removal. The Court, thus, lacks subject-matter jurisdiction and should remand this case to state court.

*Id*. at 17-18. In reaching this conclusion, the magistrate judge did not address Defendants' arguments regarding the applicability of Delaware law, the *contra proferentem* rule under Delaware law, or the Delaware Revised Uniform Limited Partnership Act ("DRULPA") that were raised for the first time in Defendants' reply to their jurisdictional discovery motion.

Defendants sought and were granted an extension to file their objections to the Report, which were filed on March 16, 2020. The court discusses Defendants' objections in more detail below.

## II.    Standard for Reviewing Defendants' Objections

Defendants contend that the court should review de novo the parts of the magistrate judge's Report objected to by them under Federal Rule of Civil Procedure 72(b) applicable to dispositive motions. The magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard. 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("The district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."). This highly deferential standard requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been

committed." *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948). As explained

by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL

1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions. [T]he abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotations marks omitted).

The court referred Plaintiff's Motion to Remand and Defendants' Motion to Conduct

Jurisdictional Discovery to the magistrate judge under 28 U.S.C. § 636. This statute gives magistrate

judges authority to rule directly on nondispositive matters but limits magistrate judges' authority

with respect to dispositive matters to issuing a report and recommendation to the district judge. *See*

28 U.S.C. § 636(b)(1)(A), (B). Plaintiff's Motion to Remand is a dispositive matter. *See Davidson

v. Ga.-Pac., LLC*, 819 F.3d 758, 763-64 (5th Cir. 2016) ("Allowing magistrate judges to enter

remand orders at a minimum approaches the constitutional line because 'a remand order is

dispositive insofar as proceedings in the federal court are concerned' and thus is 'the functional

equivalent of an order of dismissal.'") (citation omitted). Pretrial discovery motions are generally

nondispositive in nature. *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The Fifth Circuit,

however, has not addressed whether a motion to conduct jurisdictional discovery is nondispositive.

Based on the reasoning in *Davidson*, a magistrate judge's decision regarding such motion could be

viewed as "the functional equivalent of an order of dismissal," as it could potentially affect the outcome of a motion to remand. *See Davidson*, 819 F.3d at 764. Accordingly, out of an abundance of caution, the court reviews the magistrate judge's findings and conclusions regarding Plaintiff's Motion to Remand, as well as the magistrate's judges denial of Defendants' Motion to Conduct Jurisdictional Discovery, de novo, even though Defendants' jurisdictional discovery motion was referred for determination.

## III.    Discussion

Defendants contend that the court should sustain their objections to the Report and deny Plaintiff's Motion to Remand, or, alternatively, allow them to conduct jurisdictional discovery. The court discusses Defendants' objections to the Report concerning Plaintiff's Motion to Remand before addressing their alternative objections to the denial of their request to conduct jurisdictional discovery, as resolution of the objections regarding Plaintiff's Motion to Remand disposes of and moots a number of arguments asserted by Defendants with respect to their request to conduct jurisdictional discovery.

### A.    Objections to Recommended Disposition of the Motion to Remand

Defendants continue to maintain that there is complete diversity between the parties because the steps they contend are prerequisites to admitting Mr. Wiszniewski as a limited partner of Surge LP were not met before removal of the case to federal court. Defendants, therefore, contend that Mr. Wiszniewski's New York citizenship should not be imputed to Surge LP for purposes of determining whether there is complete diversity of citizenship between the parties. Defendants now argue, however, that those requirements or steps are contained in the Partnership Agreement and *Note*, rather than the Partnership Agreement and *Subscription Agreement.* They also contend now that

only the first five of the six steps previously advocated by them must be satisfied.  Defendants assert

that the magistrate judge essentially "*adopted these steps as necessary for conversion* and analyzed

whether the conversion took place according to these steps."  *Id.* at 4 (emphasis added).

Although Defendants previously argued that there was no indication that *the Partnership*

*endorsed the Note*, they now contend that the magistrate judge erred in  finding no evidence that *the*

*Partnership had not endorsed the Note* when she analyzed the second step under the Note.  *Id.*

(citing Pl.'s Reply to Mot. to Remand App. 2, § 2(c)-(d) (Doc. 38-1)).  Defendants now maintain that

the Note requires Mr. Wiszniewski, as the Holder of the Note, rather than the Partnership, to endorse

the Note.  Defs.' Obj. 4.  Defendants assert that "[t]here is no question that Mr. Wiszniewski did not

endorse the Note here."  Defs.' Obj. 4.

Defendants further assert that Mr. Wiszniewski  "never delivered the physical Note at all,

let alone an endorsed one." *Id.*  For these reasons, Defendants contend that "it is clear that the

[second step or] condition precedent to converting the Note into partnership interest, as stated in

Section 2(d)(i) of the Note, never occurred." *Id.* at 4-5 (citation omitted).  Thus, according to

Defendants, Mr. Wiszniewski did not become a limited partner of Surge LP, and there is complete

diversity of citizenship.

For the first time, Defendants also contend that remand of this action would be inappropriate

at this early stage of the litigation in light of Plaintiff's motion to dismiss a related New York action

filed by Mr. Wiszniewski in October 2019:

> It must be noted that the very fact of whether or not Mr. Wiszniewski is a
> limited partner of the Partnership is currently being litigated in Supreme Court of the
> State of New York, County of New York, in the case captioned *Grzegorz Mszniewski*
> *v. Surge Busy Bee Partners, LP et al.*, Index No. 656110/2019 ("New York Action").
> In the New York Action, related entities to Plaintiff in this action ("Related Entities")
> have taken the position that whether or not the Note was properly converted is an

ultimate issue in the Texas action. The Court may take judicial notice of the motion to dismiss the New York Action ("Motion to Dismiss") . . . The Motion to Dismiss the New York Action was filed after the Motion to Remand was filed here. In the Motion to Dismiss, the Related Entities claim that the issue of the conversion of the Note is at issue in this Texas case and thus the New York Action should be dismissed. *See* Motion to Dismiss, Memorandum of Law, p. 4-8. Though this is not Defendants' position, Plaintiff here is bound by the position taken in New York. Courts decline to dismiss actions, or in this case, remand actions, at the motion to dismiss stage for lack of subject matter jurisdiction, when the issue of jurisdiction is inextricably intertwined with the merits of the case. *See Williamson v. Tucker*, 645 F.2d 404,415 (5th Cir. 1981); *see also Chatham Condo. Assoc. v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) ("[T]he preferred procedure in cases . . . where the jurisdictional issue is inextricably bound up with the merits, is to defer resolution of the jurisdictional question to a consideration of the merits"). Courts in other circuits have followed this rationale specifically with reference to diversity and membership in an LLC. *See Beane v. Beane*, 2010 WL 882892, at *2 (D.N.H. Mar. 5, 2010) (where the court could not decide diversity without deciding an ultimate issue of the case, the court deferred resolution of the jurisdictional issue until the time of trial or summary judgment); *see also InieliClear, LLC v. Victor*, 2017 WL 2213125,at *3-4 (D. Conn. May 18, 2017) (same). Accordingly, even according to Plaintiff, remand is inappropriate at this juncture.

Defs.' Obj. 5 & n.1.

### 1.    Subject Matter Jurisdiction Standard

Defendants do not argue that the magistrate judge applied the wrong legal standard in recommending that Plaintiff's Motion to Remand be granted, and the court concludes that the legal standard for subject matter jurisdiction included in the Report is correct and need not be repeated here, except to note a few key points. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims. *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A

federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted). Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). As the party seeking to invoke subject matter jurisdiction by removing this action to federal court, Defendants have the burden of establishing subject matter jurisdiction. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (footnote omitted).

For the reasons that follow, the court determines that Defendants have failed to meet this burden because their contention that the certain requirements must be satisfied for Mr. Wiszniewski to be admitted as a limited partner of Surge LP is not supported by the three contracts or the evidence of the e-mail communications that occurred in October 2018. The Partnership Agreement and Note set forth the relevant procedure for admitting Mr. Wiszniewski as a limited partner of Surge LP—though not the procedure urged by Defendants—and the evidence establishes that Mr. Wiszniewski was admitted as a limited partner in accordance with that procedure. Although Defendants' objections focus on what they refer to as the second step or requirement for partnership admission, they continue to maintain that all steps identified by them must be satisfied and that those steps have not been met. Accordingly, the court does not limit its analysis to the second step.

## 2.      Requirements for Partnership Admission in the Partnership Contracts

As a preliminary matter, the court disagrees that the magistrate judge "adopted" the steps or requirements that Defendants contend are conditions to admitting Mr. Wiszniewski as a limited partner of Surge LP. The Report describes Defendants' position regarding these steps as argument and assertions, which hardly qualify as an adoption of their position. *See* Report 11 ("Defendants *argue* 'there is no evidence that all the steps required by the Partnership Agreement and the Subscription Agreement were undertaken," to add an additional limited partner. Resp. 8. Defendants *assert* the required steps included [the following six steps]:").  Moreover, the magistrate judge discussed each of the steps advocated by Defendants, but in many respects she rejected Defendants' characterization and interpretation of the Partnership Agreement, Subscription Agreement, Note, and October 2018 correspondence submitted by the parties.

Defendants assert that section 3.01(a) supports their contention that "[i]nclusion of the limited partner's name, capital contribution, and number and type of units on the Partner Schedule," and that "amendment of the Partnership Schedule is necessary to admit additional partners" and a prerequisite to Mr. Wiszniewski becoming a limited partner in Surge LP.  Defs.' Resp. to Mot. to Remand 8-9. According to Defendants' analysis, sections 3.01(a) and 3.02(b)(ii) of the Partnership Agreement together give rise to what they refer to as the fifth step for limited partner admission. The court disagrees.

The Partnership Agreement provides that the term "'Limited Partner' has the meaning set forth in the preamble to this Agreement." Defs.' App. Ex. B at 4 (Doc. 34).  The preamble states:

> This Amended and Restated Limited Partnership Agreement of Surge Busy Bee Partners LP (the "Partnership"), dated, made and effective as of October [ ] , 2017, is entered into by and among Surge Busy Bee Partners GP LLC, a Delaware limited liability company, as general partner of the Partnership (the "General Partner"),

Surge Busy Bee CV LLC, a Delaware limited liability company, as a special limited partner (the "Carry Partner"), and the other limited partners listed from time to time on the Partner Schedule, together with any other Persons admitted as limited partners from time to time pursuant to the terms of this Agreement (such Persons, including the Carry Partner, are hereinafter individually referred to as a "Limited Partner" and collectively referred to as the "Limited Partners").

*Id.* at 1. Thus, contrary to Defendants' assertion, limited partners in Surge LP are not limited to those persons listed on the Partner Schedule, as the preamble to the Partnership Agreement expressly states that limited partners also include **"any other Persons admitted as limited partners from time to time pursuant to the terms of this Agreement."** *Id.* (emphasis added).

Defendants contend, based on section 3.02 of the Partnership Agreement, that inclusion of the name of a limited partner in the Partner Schedule, as well as the date the Partner Schedule is amended to include the name of a limited partner, is key. Section 3.02 of the Partnership Agreement provides that, "[u]pon the amendment of the Partner Schedule, such Person shall be deemed to have been admitted as a Limited Partner and shall be listed as such on the books and records of the Partnership." *Id.* § 3.02(b). As correctly noted by Plaintiff and the magistrate judge, however, section 3.02, by its express language, applies only to a person "admitted as a Limited Partner with respect to an Additional Unit." *Id.*

Moreover, the Partnership Agreement distinguishes between "Additional Units" and "LP Units," and the evidence submitted by the parties establishes that Mr. Wiszniewski was allocated and issued LP Units, not Additional Units. The term "Additional Units" is defined as having "the meaning set forth in Section 3.02," which states:

Subject to Section 3.03, the General Partner shall have the right to cause the Partnership to authorize and issue or sell to any Person (including Partners and Affiliates of Partners) any of the following (which for purposes of this Agreement shall be "Additional Units"): (i) additional Units (including new classes or series of Units thereof having rights which are preferential to or otherwise different than the

rights of any then-existing class or series of Units) and (ii) obligations, evidences of indebtedness or other securities or interests in each case convertible into or exchangeable for Units.

*Id*. § 3.02(a). On the other hand, the term "LP Unit" is defined by the Partnership Agreement as "an ownership unit in the Partnership, issued to Limited Partners, representing a fractional part of the Partnership Interests of all Limited Partners, and having the rights and obligations specified with respect to LP Units in this Agreement." *Id.* at 4.

The Subscription Agreement submitted by Defendants indicates that Mr. Wiszniewski was issued his fractional share of the Partnership Interests in the form of 300 "LP Units," representing a 15% interest in the Partnership in exchange for his $300,000 Capital Contribution as follows:

<u>**Initial Allocations to Investor at Closing**</u>

| | |
|---|---|
| **Total LP Units allocated to Investor:** | 300 |
| | (at 1 Unit per $1,000 Capital Contribution) |
| **Percentage Interest allocated to Investor** (subject to FN 1 below): | 15.00 % |

Defs.' App. Ex. C at 9. Footnote 1 explains that the percentage allocated was "[c]alculated using the Capital Contributions of $2,000,000 from all Partners at Closing. This is subject to dilution from the 10% in lender warrants, potential future capital calls, potential GP fees per the Partnership Agreement, and any other potential future dilutive events such as options issued to key employees." *Id.* n.1. The Partner Schedule produced by Plaintiff to Defendants similarly indicates that there was an initial total Capital Contribution by the limited partners of $2,000,000 with 2,000 in LP Units allocated to six persons or entities, including Mr. Wiszniewski. Defs.' App. Ex. A. Except for Mr.

Wiszniewski, the Partner Schedule indicates that all Limited Partners were admitted on November 16, 2017, the same date the Partnership Agreement was executed. *Id*.

Because the Subscription Agreement and Partner Schedule submitted by Defendants indicate that Mr. Wiszniewski was allocated "LP Units," not "Additional Units," section 3.02 is inapplicable to the court's analysis of whether and when Mr. Wiszniewski was admitted as a limited partner of Surge LP, notwithstanding Defendants' contention that section 3.02(a) also defines "Additional Units" as including promissory notes or securities convertible into Partnership units. *See* Defs.' Reply to Mot. to Conduct Jurisdictional Disc. 7 ("This provision [§ 3.02(a)] clearly describes the issuance of the promissory note to [Mr.] Grzegorz Wiszniewski which can be converted into units. . . . Defendants respectfully assert §3.02 specifically applies to the specific facts before this Court, meaning that the amendment of the Partner Schedule is determinative of when and if [Mr.] Wiszniewski became a limited partner and, therefore, this Court's jurisdiction.").

Additionally, the Subscription Agreement and Partner Schedule both support Plaintiff's argument that the Partnership units issued to Mr. Wiszniewski could not have been Additional Units. Specifically, as detailed above, these documents both indicate that only 2,000 LP Units in the Partnership were ever issued; that these units were issued or allocated in November 2017 when investors made their initial, and only capital contributions to the Partnership totaling $2,000,000; and Mr. Wiszniewski was issued his fractional share of these 2,000 LP Units in October 2018 when he elected to convert his $300,000 Note into 300 LP Units in the Partnership.

Regarding Partnership units other than "Additional Units," section 3.01 of the Partnership Agreement provides that limited partners shall make Capital Contributions in accordance with their Subscription Agreements, and, in the discretion of the General Partner, such contributions may be

made "in the form of cash, securities, property, services rendered, or a promissory note or other obligation to pay cash or transfer property to the Partnership."  Defs.' App. Ex. B at § 3.01(a). Unlike section 3.02, section 3.01 does not state, as Defendants contend, that a person who makes a Capital Contribution and is issued Partnership or LP Units is deemed admitted upon amendment of the Partner Schedule or the time such person is listed as a limited partner on the books and records of the Partnership.  Section 3.01(a), instead, expressly and unambiguously provides that: "*[u]pon receipt of the Capital Contribution* set forth opposite such Partner's name on the Partner Schedule, *each such Partner shall be deemed to own the number and type of Units* set forth opposite such Partner's name on the Partner Schedule, as amended from time to time in accordance with the terms of this Agreement."[4]  *Id.* (emphasis added).

Defendants' interpretation of section 3.01 is also flawed and does not support their argument that "[i]nclusion of the limited partner's name, capital contribution, and number and type of units on the Partner Schedule," and that "amendment of the Partnership Schedule is necessary to admit additional partners" and a prerequisite to Mr. Wiszniewski becoming a limited partner in Surge LP. Defs.' Resp. to Mot. to Remand 8-9. The plain language of section 3.01(a) merely indicates when a Limited Partner is deemed to own the number and type of partnership units specified in the Partner Schedule.  According to section 3.01, that time is not the date when the Partner Schedule is amended to include the Limited Partner's name, capital contribution, or partnership units, but, instead, the date that the Partnership receives the Limited Partner's Capital Contribution, which "in the General Partner's discretion, [may be made] in the form of cash, securities, property, services rendered, or a promissory note or other obligation to pay cash or transfer property to the Partnership."  *Id.* §

---

[4] The term "Partner" is defined by the Partnership Agreement to mean either the General Partner or a Limited Partner.  Defs.' App. Ex. B at 5.

3.01(a); *compare* § 3.02(b)(ii) ("Upon the amendment of the Partner Schedule, such Person shall be deemed to have been admitted as a Limited Partner[.]").  Section 3.01(a) applies to the issuance of partnership units based upon the making of Capital Contributions or the execution of Subscription Agreements like the one executed by Mr. Wiszniewski and provides that "no Partner shall be required to make any additional Capital Contributions hereunder, *except to the extent such Partner is exercising its rights pursuant to Section 3.03*."  Section 3.02(a) provides: "*Subject to Section 3.03*, the General Partner shall have the right to cause the Partnership to authorize and issue or sell . . . 'Additional Units.'" Section 3.03 deals solely with Additional Units and states, "[i]f the Partnership authorizes the issuance and sale of *Additional Units*, then each Limited Partner shall be entitled to purchase a portion of such Additional Units as provided herein."  Based on the foregoing language in sections 3.01, 3.02(a) and 3.03(a), it is readily apparent that section 3.01 does not apply to Additional Units, whereas section 3.02 does. Thus, sections 3.01(a) and 3.02(b)(ii) apply to different situations and the issuance of different types of limited partnership interests, and Defendants attempt to combine these two sections to arrive at what they refer to as the fifth step is not supported by sections 3.01, 3.02, and 3.03 of the Partnership Agreement.

As correctly noted by the magistrate judge, the Partnership Agreement further provides the general partner of the Partnership extensive authority and discretion in conducting Partnership business as it deems appropriate, including, the authority and discretion in determining the manner in which limited partners are admitted.  Section 2.06 of the Partnership Agreement states that the general partner of the Partnership has the authority and may, in its discretion, "execute, verify, swear to, acknowledge, deliver, record and file:  (i) any counterparts of this Agreement to be entered into, *or such other documents as the General Partner may consider appropriate, to effect the admission*

*of any Limited Partner to the Partnership*; (ii) all certificates and other instruments, including any amendments to this Agreement, the Subscription Agreement or to the Certificate of Limited Partnership, *that the General Partner determines to be appropriate to . . . admit such Partner as a Limited Partner in the Partnership*," as wells as "all instruments that the General Partner determines to be appropriate to reflect any amendment to this Agreement or the Subscription Agreements." Defs.' App. Ex. B at § 2.06. The Note and Subscription Agreement provide the general partner with similar authority and make the terms of the Partnership Agreement binding on Mr. Wiszniewski upon conversion of the Note. *See* Defs.' App. Ex. C at §§ 4, 6; Pl.'s Reply App. § 2(d).

Section 11.07(a) of the Partnership Agreement explains that the general partner "*may* amend and modify the provisions of the [Partnership] Agreement and the Partner Schedule to the extent necessary to reflect the issuance of Units in the Partnership, the admission or substitution of any Partner permitted under this Agreement," but does not require that the Partnership Agreement or Partner Schedule be amended for this purpose. In addition, section 11.07(b) allows the general partner, without approval of any Limited Partner, to enter into "Side Letters," supplemental agreements, and Subscription Agreements having different terms than Subscription Agreements of other Limited Partners or that have the effect of:

> establishing rights under, or alternating or supplementing the terms of, or providing an interpretation (and which rights, terms or interpretation may be more favorable than the rights, terms and interpretation applicable to other Limited Partners) of certain provisions of, this Agreement or such Limited Partners' Subscription Agreement (each such side letter, agreement or different Subscription Agreement, a "Side Letter").

Section 11.07(b) goes on to state that the terms of any Side Letter entered into "shall govern with respect to the Limited Partner who entered into such Side Letter notwithstanding the provisions of

this Agreement or any Subscription Agreement, and all Limited Partners agree that this Agreement and any Subscription Agreement shall be amended by such Side Letter."

Section 2(c) of the Note addresses the conversion process and provides that Mr. Wiszniewski, as the holder of the Note, may convert the Note into "Units of limited partner interest of the Partnership (the "Conversion Units") *which shall constitute, as of the date of the Conversion Notice (as defined below), fifteen percent (15%) of the Partnership's issued and outstanding Units (on a fully diluted basis, including the Conversion Units) as of the time of conversion*." *Id.* § 2(c) (emphasis added). Section 2(c) goes on to explain that Mr. Wiszniewski "may exercise such conversion right by surrendering and delivering this Note to the Partnership accompanied by a written notice (the "***Conversion Notice***") to the Partnership indicating that the Holder elects to cause the conversion of this Note in accordance with the provisions of this Section 2(c)." *Id.* Combined, section 2(c) of the Note and sections 2.06 and 3.01(a) of the Partnership Agreement reflect the discretion granted to the general partner to determine the form of Capital Contributions that could be made to the Partnership by Partners, which discretion was exercised by Surge LP's general partner in executing the Subscription Agreement and the Note that gave Mr. Wiszniewski the option of converting the Note into "fifteen percent (15%) of the Partnership's issued and outstanding Units (on a fully diluted basis, including the Conversion Units) as of the time of conversion." *Id.*

According to the documents Plaintiff voluntarily provided to Defendants, which Defendants attached to their response to the Motion to Remand, Mr. Wiszniewski exercised his right to convert the Note into "LP units" in accordance with section 2(c) of the Note on October 15, 2018. Specifically, on this date, in a series of e-mail communications between Mr. Wiszniewski, Mr. Wiszniewski's attorney, and Mr. Beauchamp, Surge LP's general partner: (1) Mr. Wiszniewski

notified Mr. Beauchamp that he wished to convert his Note to LP Units in accordance with section 2(c) of the Note: "I would [like] to exercise my conversion rights *under the convertible promissory note Section 2(c)* of the convertible note"; (2) pursuant to Mr. Wiszniewski's request, Mr. Beauchamp amended the Subscription Agreement to reflect the Partnership's acceptance of the Subscription Agreement, attached the Note, and requested that Mr. Wiszniewski respond that he surrendered the Note; and (3) Mr. Wiszniewski responded: "Based on your acceptance of the conversion of my convertible promissory note into *LP units* as per the subscription agreement, I surrender my convertible promissory note." Defs.' App. Ex. D.

During this exchange, Mr. Beauchamp expressed the opinion that e-mail was sufficient to effect and acknowledge the conversion without the need for a separate document, and Mr. Wiszniewski's attorney agreed that this was sufficient as long as Mr. Wiszniewski was issued his 15% partnership units as a result of the conversion. Mr. Wiszniewski's attorney also expressed the opinion that it would be necessary to amend the Partnership Agreement and Capital Table to reflect that "[Mr. Wiszniewski] is added [to] the Limited Partnership at his conversion rate." *Id.* Mr. Beauchamp explained, however, that this could be accomplished by simply amending the Subscription Agreement to include Mr. Wiszniewski's partnership units and ownership percentage, acceptance by the Partnership of the conversion, and surrender of the Note by Mr. Wiszniewski. The e-mails exchanged indicate that, in accordance with this proposed procedure and the discretion and authority granted to the Partnership's general manager: (1) Mr. Wiszniewski's Note was converted into LP Units; and (2) he was issued his LP Units representing 15% of the Partnership's existing LP Units. This same evidence establishes that Mr. Wiszniewski was admitted as a limited partner of Surge LP on October 15, 2018, the date he converted his Note and was issued LP Units

in the Partnership in accordance with the Subscription Agreement and section 2(c) of the Note, and as reflected in the Partner Schedule and e-mail correspondence on this date.

The court determines that October 15, 2018, is the date of Mr. Wiszniewski's admission, because, as previously noted, the Partnership Agreement defines the term "LP Unit" as "an ownership unit in the Partnership, *issued to Limited Partners*, representing a fractional part of the Partnership Interests of all Limited Partners, and having the rights and obligations specified with respect to LP Units in this Agreement." Defs.' App. Ex. B at 4. October 15, 2018, is the date Mr. Wiszniewski provided his "Conversion Notice" under section 2(c) of the Note and was issued his 300 LP Units in the Partnership, representing a fifteen percent fractional share of the Partnership Interests of all Limited Partners. Accordingly, this is the date he became a Limited Partner of Surge LP. *Id.*

Defendants' contention that completion of the requirements in section 2(d) of the Note and section 3.02 of the Partnership Agreement applicable to "Additional Units" is a necessary prerequisite for Mr. Wiszniewski's admission as a Limited Partner of Surge LP is belied by Mr. Wiszniewski's own understanding and request to convert his Note to "LP units" "under the convertible promissory note Section 2(c)." Defs.' App. Ex. D. Section 2(d) states: "Upon a conversion of this Note into Conversion Units pursuant to Section 2(c), [Mr. Wiszniewski] shall (i) surrender this Note, duly endorsed, to the Partnership for cancellation on the Partnership's books and records and (ii) execute and deliver to the Partnership a counterpart signature page or joinder to the Partnership Agreement together with any other documents . . . requested by the Partnership." *Id.* Although section 2(d) of the Note states that Mr. Wiszniewski shall undertake certain actions, the inclusion of this language is clearly intended to protect the Partnership from potential claims by

him *after* or "*[u]pon conversion of th[e] Note* into Conversion Units pursuant to Section 2(c)," not to set forth conditions that must be satisfied *prior* to his admission as a limited partner under section 2(c). Pl.'s Reply App. § 2(d). Accordingly, section 2(d) of the Note does support Defendant's assertion that either the Subscription Agreement or the Note contain the conditions precedent included in what they refer to as the second step, and Defendants' objections to the contrary are without merit.

Moreover, as noted by the magistrate judge, section 2(d) goes on to state that, even if Mr. Wiszniewski does not do what is required of him under this section, the Partnership, upon conversion of the Note, is released from any obligations and liabilities under the Note and has the power and authority to undertake any action necessary to effectuate the provisions of section 2(c) or 2(d) on Mr. Wiszniewski's behalf in connection with conversion of the Note. *Id.* Thus, even if he did not surrender the endorsed Note and deliver an executed signature page of the Partnership Agreement to the Partnership together with any other documents requested, the Partnership had the authority to do this on his behalf. Regardless, the evidence submitted by the parties establishes that the Note was signed by Partnership and Mr. Wiszniewski, and neither the Note nor any of the other documents submitted by the parties require the Note to be signed or endorsed a second time when converted to LP Units.

The evidence also establishes that Mr. Wiszniewski surrendered the Note, and the court agrees with the magistrate judge that the Note does not require it to be physically surrendered or delivered. Additionally, the Subscription Agreement states: " If the Note is converted and the Investor is accepted as a Limited Partner of the Partnership, the Partnership Agreement will constitute a valid and binding agreement of the Limited Partner." Defs.' App. Ex. C at § 4.

Paragraph 18 of the Note also defines the parties' agreement as including the Note, the Partnership Agreement, and the Subscription Agreement. Pl.'s Mot. to Remand Reply App. at 5. Thus, Defendants' contentions and interpretation of the Partnership Agreement, Subscription Agreement, and Note are simply not supported by the plain language of these documents or other evidence.

Defendants' contentions regarding the applicability of Delaware law, the *contra proferentem* rule under Delaware law, or the Delaware Revised Uniform Limited Partnership Act ("DRULPA") do not change the court's analysis. These arguments were not addressed by the magistrate judge, likely because they were raised for the first time in Defendants' reply to their jurisdictional discovery motion. Raising a new argument in a reply brief is always problematic.[5] As noted, this argument and other arguments raised by Defendants also constitute improper surreplies.[6] Regardless, Defendants did not specifically object to the magistrate judge's not addressing these arguments. The arguments are, therefore, waived. Even if not waived, they do not change the result reached here.

### 3. Choice of Law

Defendants contend that Delaware law, including the DRULPA, applies because the Partnership Agreement contains a choice of law provision calling for application of Delaware law.

---

[5] Arguments made for the first time and attempts in a reply brief to reframe prior arguments are generally not appropriate for consideration. *See Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("The Defendants attempt to reframe the windfall argument in their reply brief by arguing the windfall is another judgment debtor to execute against, not the award of damages itself. This court will not consider arguments raised for the first time in a reply brief.") (citing *Wright v. Excel Paralubes*, 807 F.3d 730, 736 (5th Cir. 2015)). The reason for this is that the purpose of a reply is not to assert new arguments that could have been raised in the original motion, but rather to rebut factual and legal arguments raised in the opposition to the original motion. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by [the movant's] opening brief and by [the respondent's] response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court.") (internal quotations omitted).

[6] Surreplies are "appropriate only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Brackens v. Dallas Ind. Sch. Dist.*, No. 3:09-CV-06420-D, 2010 WL 5464823, at *5 (N.D. Tex. Sept. 20, 2010).

The Note and Subscription Agreement also contain choice of law provisions. Paragraph 16 of the Note includes a Texas choice of law clause. The Subscription Agreement similarly states that it is governed by and shall be construed in accordance with Texas law regardless of where the agreement was executed by the parties, except to the extent the DRULPA applies. Defs.' App. Ex. C at § 8 (Doc. 34). Finally, paragraph 11.14 of the Partnership Agreement provides that Delaware law governs its terms:

> THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF DELAWARE EXCLUDING ANY CONFLICT OF LAWS RULE OR PRINCIPLE THAT MIGHT REFER THE GOVERNANCE OR THE CONSTRUCTION OF THIS AGREEMENT TO THE LAW OF ANOTHER JURISDICTION. In the event of a direct conflict between the provisions of this Agreement and any provision of the Certificate of Limited Partnership or any mandatory provision of the [DRULPA], the applicable provision of the Certificate of Limited Partnership or the Act shall control.

Defs.' App. Ex. B at § 11.14 (Doc. 34).[7]

Defendants do not explain why they believe Delaware law governs the issue of whether and when Mr. Wiszniewski became a limited partner of Surge LP. As the outcome of the court's analysis would be the same under either Delaware or Texas law,[8] it need not determine which of these state's law applies to the parties' dispute as to whether Mr. Wiszniewski was a limited partner at the time when the case was removed to federal court. *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 924 F.3d 682, 697 (5th Cir. 2019). The court, therefore, assumes as Defendants contend that Delaware law applies. The court also applies the DRULPA as urged by Defendants, to the extent consistent with the Partnership Agreement, which provides that DRULPA applies only if the terms of the Partnership Agreement directly conflict with the DRULPA. Defs.' App. Ex. B at § 11.14

---

[7] The Certificate of Limited Partnership is not before the court.

[8] Texas's rules of contract interpretation are similar to those followed by Delaware. Section 153.101 of the Texas Business Organizations Code is also similar to section 17-301 of the DRULPA.

(Doc. 34). Applying the DRULPA in this manner is not only consistent with the Partnership Agreement (and Note), but also Delaware law and the statute itself.

### 4. Delaware Law and the DRULPA

The DRULPA has been interpreted as "embod[ying] the policy of freedom of contract and maximum flexibility." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002) (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290, 291 n.27 (Del. 1999)). The Delaware Supreme Court has recognized, "by statute, the parties to a Delaware limited partnership have the power and discretion to form and operate a limited partnership in an environment of private ordering according to the provisions in the limited partnership agreement." *Id.* (citing *Elf Atochem*, 727 A.2d at 287). Only "[when] the partners have not expressly made provisions in their partnership agreement or [ ] the agreement is inconsistent with mandatory statutory provisions, . . . will [a court] look for guidance from the statutory default rules, traditional notions of fiduciary duties, or other extrinsic evidence." *Id.* (citing *Sonet v. Timber Co.*, 722 A.2d 319, 323 (Del. Ch. 1998)); *see also Cantor Fitzgerald, L.P. v. Cantor*, 2000 WL 307370, at *21 (Del. Ch. Mar.13, 2000) ("[O]nly when the partnership agreement is silent or ambiguous, or where principles of equity are implicated, will a Court begin to look for guidance from the statutory default rules, traditional notions of fiduciary duties, or other extrinsic evidence.") (citing *Sonet*, 722 A.2d at 324). Section 17–1101(c) of the DRULPA likewise instructs courts to give "maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements" as written. 6 Del. C. § 17–1101(c).

Section 17-101(8) of the DRULPA states that a "limited partner" is "a person who is admitted to a limited partnership as a limited partner as provided in 6 Del. C. § 17-301." Section 17-301 provides in pertinent part as follows regarding the admission of limited partners:

(a) In connection with the formation of a limited partnership, a person is admitted as a limited partner of the limited partnership upon the later to occur of:

(1) The formation of the limited partnership; or

(2) The time provided in and upon compliance with the partnership agreement or, if the partnership agreement does not so provide, when the person's admission is reflected in the records of the limited partnership.

(b) After the formation of a limited partnership, a person is admitted as a limited partner of the limited partnership:

(1) In the case of a person who is not an assignee of a partnership interest, including a person acquiring a partnership interest directly from the limited partnership and a person to be admitted as a limited partner of the limited partnership without acquiring a partnership interest in the limited partnership, at the time provided in and upon compliance with the partnership agreement or, if the partnership agreement does not so provide, upon the consent of all partners and when the person's admission is reflected in the records of the limited partnership;

6 Del. C. § 17-301(a)-(b)(1).

Under Delaware law, contracts are interpreted as a matter of law, even in the presence of an ambiguity. *Odmark v. Mesa Ltd. P'ship*, 59 F.3d 1241 (5th Cir. 1995) (citing *Playtex FP, Inc. v. Columbia Cas. Co.*, 622 A .2d 1074, 1076 (Del. 1992)). "The basic rule of contract construction gives priority to the intention of the parties." *E.I. du Pont de Nemours v. Shell Oil Co., Del. Supr.*, 498 A.2d 1108, 1113 (1985) (citations omitted). Agreements must be construed "as a whole, giving effect to all provisions therein" such that "the meaning [that] arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall" contract. *Id.* The overall purpose of the contract and of the specific provision at issue should be considered. *Playtex FP, Inc.*, 622 A .2d at 1076 (citing *Continental Casualty Co. v. Ocean Accident and Guarantee Corp.*, 209 A.2d 743, 751 (1965)).

If a contract is determined to be unambiguous, "extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. But when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (citation omitted). Even when contract language is unambiguous, it is sometimes "appropriate for the trial court to consider some undisputed background facts to place the contractual provision in its historical setting without violating this principle. But the trial court must be careful in entertaining background facts to avoid encroaching on . . . basic [contract interpretation] principles[.]" *Id.* n.7. "Contract language is not ambiguous simply because the parties disagree concerning its intended construction. The true test is what a reasonable person in the position of the parties would have thought it meant." *Id.* n.8 (citation omitted). Delaware follows the *contra proferentem* principle of construction that calls for construing ambiguities against the drafter of the contract. *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 627 (Del. 2003) (citing Restatement (Second) of Contracts § 206 cmt. a (1981)). This principle has been applied in the limited partnership context, particularly when it is apparent that the investor had no input in drafting or control over the terms of a limited partnership agreement that is determined to be ambiguous. *SI Mgmt. L.P. v. Wininger*, 707 A.2d 37, 43-44 (Del. 1998).

## 5.     Relevance of the Doctrine of *Contra Proferentem*

Defendants do not explain why they believe the provisions in these documents are ambiguous, other than to misstate and dispute the interpretation of the documents proffered by Plaintiff, and the court determines they are not ambiguous because, as explained, disagreement is

insufficient to create an ambiguity in an otherwise unambiguous contract. *Eagle Indus., Inc.* 702 A.2d at 1232 n.8 (citation omitted). Absent ambiguity, the doctrine of *contra proferentem* under Delaware law has no application here notwithstanding Defendants' contentions to the contrary. *Twin City Fire Ins. Co.*, 840 A.2d at 627 (citation omitted); *SI Mgmt. L.P.*, 707 A.2d at 43-44.

Defendants' contention, that the doctrine of *contra proferentem* should apply because Surge LP's "general partner is attempting to take away a valuable right—the right to Federal Court jurisdiction among diverse citizens" is likewise unsupported by the evidence in this case or legal authority. Defs.' Reply to Mot. to Conduct Jurisdictional Disc. 4. Defendants contend, on one hand, that it would be unfair to not construe the Partnership Agreement against the general partner because Mr. Wiszniewski did not draft or participate in the drafting of this agreement. Again, however, this rule of contract interpretation only applies when an ambiguity exists. Defendants acknowledge as much, and they cite no legal authority, under Delaware law or otherwise, that would allow the court to apply this rule simply because the party with the burden of establishing subject matter jurisdiction based on diversity of citizenship believes, in hind sight, that a contract's terms are unfair as applied to him or her. The court is also unaware of any such legal authority.

In addition, Defendants appear to argue that the rule of *contra proferentem* should apply given their disagreement with Plaintiff's assertion that the Partnership Agreement grants Surge LP's general partner broad authority and discretion as to the manner for admitting limited partners, and their contention that section 2.06 of the Partnership Agreement does not allow "the general partner to circumvent the specific terms of the Partnership Agreement []or to fail to comply with the applicable Delaware statutes. No provision in the Partnership Agreement and no provision under the [DRULPA] grants that authority to the general partner." Defs.' Reply to Mot. to Conduct

Jurisdictional Disc. 5-6. Defendants' disagreement with Plaintiff's interpretation of the Partnership Agreement, however, does not give rise to an ambiguity, and the amount of authority granted to the general partner of a limited partnership is not relevant to whether the rule of *contra proferentem* applies.

Moreover, the court has already determined that the Partnership Agreement, together with the Note and Subscription Agreement, unambiguously grants the general partner discretionary authority to determine the procedure for admitting limited partners and the authority to carry out that procedure by executing any documents determined by it to be necessary, including Side Letters and amendments to Subscription Agreements, as was done here in conjunction with the e-mail exchange on October 15, 2018. As the court explains below, it is irrelevant whether any provision of the DRULPA provides the general partner with the type of authority granted by the agreements here. Additionally, it is unclear what is meant by Defendants' contention that Surge LP's general partner "fail[ed] to comply with the applicable Delaware statutes," *id*., as Defendants do not identify any particular statute, other than the DRULPA, or any statutory provision of the DRULPA that they contend was violated, except for section 17-301, which, as explained below, is inapplicable.

### 6.    Applicability of the DRULPA's Statutory Default Rules

Defendants contend that subsection (a) of 17-301 of the DRULPA, applicable to limited partners admitted "[i]n connection with the formation of a limited partnership," applies here, although Mr. Wiszniewski did not seek to convert his Note into Partnership interests until October 2018, approximately one year after the Partnership was formed. Regardless, the result is the same under subsections (a) and (b) of 17-301, as both similarly state that a limited partner is deemed admitted as of "[t]he time provided in and upon compliance with the partnership agreement," and

that the provisions of 17-301(a) and (b) only come into play when the partnership agreement does not so provide. 6 Del. C. § 17-301(a)(2) & (b)(1). Consistent with section 17–1101(c)'s instruction to enforce limited partnership agreements as written, Delaware courts only look to the DRULPA's statutory rules when the partnership agreement itself is silent, ambiguous, or inconsistent with mandatory statutory provisions, or principles of equity are implicated. *Gotham Partners, L.P.*, 817 A.2d at 170; *Cantor Fitzgerald, L.P.*, 2000 WL 307370, at \*21 (citing *Sonet*, 722 A.2d at 324).

According to Defendants, the statutory default language of section 17-301 of the DRULPA applies because:

> Plaintiff has essentially conceded it did not follow the precise requirements of the Amended and Restated Limited Partnership Agreement, arguing only that the general partner had "discretion" not to do so and that Defendants' interpretation of the agreement was "strained." However, Delaware law, which governs the Partnership Agreement, specifically states a limited partner is admitted to a limited partnership only "upon compliance with the Partnership Agreement or, if the Partnership Agreement does not so provide, when the person's admission is reflected in the records of the limited partnership." Plaintiff essentially conceded Defendant Grzegorz Wiszniewski's admission was not reflected in the records of the limited partnership by providing this Court and Defendants no argument or documentation that the Partnership Schedule was amended prior to the filing of the lawsuit to include [Mr.] Grzegorz Wiszniewski.

Defs.' Reply to Mot. to Conduct Jurisdictional Disc. 2.

Defendants do not cite any legal authority to support the quoted portion of their foregoing argument, which appears to refer to section 17-301. *See id.* at 3, 7 (citing and discussing section 17-301(a)). Regardless, this argument by Defendants mischaracterizes Plaintiff's position because Plaintiff's disagreement with Defendants' interpretation of the three agreements does not amount to a concession that the requirements for partner admission were not met. The argument is also based on a flawed assumption that, under the Partnership Agreement and Subscription Agreement or Note, Mr. Wiszniewski could not be and was not actually admitted as a limited partner of Surge LP until

the date his name was added to the Partnership records and Partner Schedule. As the court has already decided this issue against Defendants, it will not "replow the same ground."

The court has also determined that the time provided in the Partnership Agreement for the admission of a Limited Partner, is the date a Limited Partner is issued LP Units in Surge LP, which, in this case, occurred on October 15, 2018, in accordance with the Partnership Agreement and section 2(c) of the Note. Thus, the Partnership Agreement provides the time a Limited Partner is deemed admitted. The Partnership and Note, when read together, are not silent or ambiguous. In addition, Defendants have not established that the Partnership Agreement or Note is inconsistent with the DRULPA or that equitable principles of any kind are implicated. Consequently, section 17-301, Delaware law interpreting the DRULPA, and the choice of law provisions in the Partnership Agreement and Subscription Agreement that reference the DRULPA do not support application of the DRULPA's statutory default rules for admission of limited partners under the circumstances.

### 7.    Propriety of Deferring Resolution of the Jurisdictional Issue

Defendants argue for the first time in their objections to the magistrate judge's Report on Plaintiff's Motion to Remand, that remand of this action for lack of subject matter jurisdiction based on diversity of citizenship would be inappropriate at this juncture because resolution of this issue would require the court to decide the merits of an ultimate issue in this case. Defendants contend that, in one of the New York actions filed by Mr. Wiszniewski, entities related to Plaintiff have taken the position that the ultimate issue or issues in this action include whether the Note was properly converted and whether Mr. Wiszniewski is a limited partner of Surge LP as a result of that conversion. Defendants assert that, while this is not their position, "Plaintiff here is bound by the position taken in [the] New York" action. Defs.' Obj. 5 & n.1. Defendants cite the Fifth Circuit's

1979 opinion in *Chatham Condominium Association* for the proposition that "the preferred procedure in cases . . . where the jurisdictional issue is inextricably bound up with the merits, is to defer resolution of the jurisdictional question to a consideration of the merits." *Id.*

"[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge." *Benamou v. Wells Fargo Bank Nat'l Ass'n for Carrington Mortgage Loan Tr., Series 2007-FRE1, Asset-Backed Pass-Through Certificates*, 711 F. App'x 241, 242 (5th Cir. 2018) (quoting *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998). The issue of whether a court should defer resolving a jurisdictional issue that would require it to decide the merits of an ultimate issue in the case is a legal argument. Likewise, whether Plaintiff is bound by arguments made in the New York action is a legal argument. Neither of these arguments was previously presented to the magistrate judge for consideration, so they are waived. *See id.* Even if not waived, Defendants' argument in this regard is not an appropriate basis for deferring the issue of whether the court lacks subject matter jurisdiction over this removed action because, regardless of the arguments made by either party in the New York action, the claims and defenses asserted by the parties in this case pertain to the SPA and are not intertwined with the jurisdictional issue.

For all of these reasons, the court agrees with the magistrate judge that it lacks subject matter jurisdiction over this action, and it determines that Defendants' contentions and objections to the contrary are without merit. Accordingly, the court **overrules** Defendants' objections to the magistrate judge's recommended disposition of the Motion to Remand and will grant the Motion to Remand.

**B.      Alternative Objections to Denial of Motion to Conduct Jurisdictional Discovery**

Defendants object as follows, contending that the magistrate judge erred in denying their

request to conduct jurisdictional discovery:

> The Fifth Circuit Court of Appeals has held that "some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012). In this case, Magistrate Judge Rutherford made an error in not allowing jurisdictional discovery. The citizenship of Plaintiff, Surge Busy Bee Holdings, LLC, is determined by the citizenship of Surge Busy Bee Partners, LP, its sole member. *See Garden [v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)]; *see also Harvey [v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).]. The citizenship of the Partnership is determined by the citizenship of its partners. *See Garden*, *supra*, 494 U.S. at 195-96. Since a dispute exists among the parties about whether Mr. Wiszniewski ever became a partner in the Partnership, this is certainly a case where jurisdictional discovery should be allowed.

> Throughout the Report and Recommendation, Magistrate Judge Rutherford noted that there was no evidence on an ultimate issue. Specifically, she stated, "Further, no evidence indicates the Partnership did not properly endorse the Note," and "Defendants have raised no evidence indicating the Note was not canceled." [Doc. 43, at 14-15].

> The lack of evidence, and Plaintiff's failure to provide evidence on these issues, is precisely the problem here. In *Murchison Capital Partners, L.P. v. Nuance Communs., Inc*., the Court ordered jurisdictional discovery when a party "refused to engage in voluntary discovery and provide information in its possession and in its control" relating to facts relevant to citizenship. Civil Action No. 3:12-CV-4746-L, 2013 U.S. Dist. LEXIS 92981, at *11 (N.D. Tex. July 2, 2013).

> Magistrate Judge Rutherford refused to rely on *Murchison* because (1) there was no remand motion in *Murchison* and the *Murchison* court expressed skepticism as to why a party that believed diversity was lacking would not file a motion to remand; and because (2) there was no refusal to participate in jurisdictional discovery in this case on the part of Plaintiff, since Plaintiff did provide certain documents when requested by Defendants. [Doc. 43, at 4].

> However, there are several defects with this reasoning and there is ample justification for allowing jurisdictional discovery in this case. First, though Plaintiff did provide some documents, it is clear it cherry-picked what documents to produce. Notably, Plaintiff did not produce an endorsed Note or evidence that the Note was in fact cancelled, as required for its conversion. *See* Note, Exhibit A, Section 2(c)

and (d). The reasoning in *Murchison* cannot possibly be read to mean that a party may provide only certain documents, which support their position, and then be exempt from jurisdictional discovery. In fact, after correspondence with Plaintiffs counsel relating to jurisdictional discovery in connection the filing of its Motion to Remand, on or about September 6, 2019, Plaintiff refused to provide or respond to further jurisdictional discovery requests. Plaintiff cannot be awarded for its lack of cooperation now.

Second, the lack of a motion to remand is not dispositive as to whether jurisdictional discovery should be granted. Defendants can find no other Texas District Court case which relies on that issue as a factor in determining whether jurisdictional discovery should be allowed or not. Further, jurisdictional discovery has been granted even when a motion has been made challenging jurisdiction. For instance, in *Cheniere LNG Terminals, LLC v. Parallax Energy LLC*, the court granted jurisdictional discovery despite the fact that the defendants filed a motion to dismiss challenging jurisdiction. *See* Civil Action No. H-16-286, 2016 U.S. Dist. LEXIS 183801, *3 (S.D. Tex. Aug. 3, 2016). The fact that the defendants in *Cheniere* forcefully asserted that there was no jurisdiction was not a dispositive factor in the analysis as to whether to grant jurisdictional discovery or not.

In addition, the date when Mr. Wiszniewski was properly listed on the books and records of the Partnership is in doubt. Before filing the Motion to Remand, Plaintiff's counsel represented to Defendants' counsel that Mr. Wiszniewski "was admitted to the LP at the time of closing the transaction in November 2017." However, as part of the Motion to Remand, Plaintiff claims the date was actually October 15, 2018. [Doc. 30 at ¶ 2]. Yet as shown in the documents given to Defendants from Plaintiff, the email expressing that the Note was surrendered was not sent until October 16, 2018. Thus, the October 15, 2018 date also seems implausible. These irregularities, combined with the fact that Plaintiff only "recently" discovered that Mr. Wiszniewski was a member of the Partnership, add up to a significant question of fact as to whether any of the dates provided by Plaintiff are accurate and whether Mr. Wiszniewski was ever properly admitted to the Partnership.

In the Report and Recommendation, Magistrate Judge Rutherford focuses on the fact that all of the dates above are before the filing of the Petition in state court and/or the Notice of Removal and thus the discrepancy is not important. However, this reasoning misses the point. Defendants are claiming that the discrepancy with the dates is evidence of backdating when the Partner Schedule was made. In other words, if the Partner Schedule was made around the time of the filing of the Motion to Remand, *i.e.* in August 2019, and Plaintiff merely typed an earlier date on it, that does not make the earlier date, October 15, 2018, the effective date for Mr. Wiszniewski's entrance into the Partnership. In *Cheniere* when there were conflicting statements from a party, the Court found jurisdictional discovery to be

appropriate. *See Cheniere LNG Terminals, LLC v. Parallax Energy LLC, supra*, 2016 U.S. Dist. LEXIS 183801, at *3. Similarly, in this case, where Plaintiff has made conflicting statements regarding Mr. Wiszniewski's entry date into the Partnership, the Court should allow jurisdictional discovery.

Defs.' Obj. 5-8.

Defendants do not argue that the magistrate judge applied the wrong legal standard in denying their Motion to Conduct Jurisdictional Discovery. They, instead, disagree with the magistrate judge's application of that standard and applicable law to the facts of this case. In any event, the court notes that the legal standard set forth in the Report with respect to Defendants' request to conduct jurisdictional discovery is correct and, therefore, need not be repeated here. The court does not address in detail the foregoing contentions by Defendants. Most of these objections are mooted by the court's rejection of Plaintiff's interpretation of the Partnership Agreement, Note, and Subscription Agreement, and their contention that these documents contain five or six requirements that must be satisfied for Mr. Wiszniewski to become a Limited Partner of Surge LP. Because the court has determined that the documents submitted by the parties unambiguously establish, as a matter of law, Mr. Wiszniewski's status as a Limited Partner of Surge LP before removal of this action to federal court, diversity of citizenship is lacking. For the same reason, Defendants' contention that Plaintiff "cherry-picked" the documents it produced and refused to provide all documents or discovery requested is irrelevant, as these documents are sought by Defendants to prove their flawed legal theory of what was required for Mr. Wiszniewski to become a limited partner of Surge LP. The court also fails to understand why Defendants needed copies of any of the so-called "cherry-picked" documents produced by Plaintiff because, as parties to the agreements and communications, Defendants should have already had possession or equal access to these documents.

Moreover, Defendants' contention that "subject matter jurisdiction turns on a disputed fact" is conclusory and insufficient to justify allowing them to conduct *further* jurisdictional discovery in light of the court's interpretation of the agreements and application of that interpretation to the evidence of the parties' communications on October 15, 2018. While Defendants clarify in their objections that they are contending that perceived irregularities or discrepancies in dates is evidence that Plaintiff engaged in fraudulent or unethical conduct in the form of "backdating" the Partner Schedule, this serious accusation is based entirely on conjecture and speculation regarding matters the court has determined are not relevant. Similarly, Defendants contend that Plaintiff's counsel made representations to Defendants' counsel regarding the date Mr. Wiszniewski was admitted to the Partnership that Defendants assert are inconsistent with the October 2018 date relied on by Plaintiff in its Motion to Remand. In their objections and previously in response to the Motion to Remand, Defendants quote Plaintiff's counsel as stating that Mr. Wiszniewski "was admitted to the LP at the time of closing the transaction in November 2017." Defs.' Obj. 7; Defs.' Resp. to Mot. to Remand 7. Defendants, however, have yet to point to any evidence supporting their contention that defense counsel made the statement quoted by them.

Mere speculation is not sufficient to support a request for further discovery. *See NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 566 (N.D. Tex. 2006) (explaining that a request to conduct additional jurisdictional discovery is appropriately denied "when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining to diversity of citizenship."); *Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015) (concluding that a party's "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a

textbook fishing expedition"). Defendants' unsupported assertion that Plaintiff and Plaintiff's counsel conspired and allegedly engaged in sanctionable conduct is based on pure speculation. It is also irrelevant.

Defendants also continue to maintain that the irregularities in dates, "combined with the fact that Plaintiff only 'recently' discovered that Mr. Wiszniewski was a member of the Partnership, add up to a significant question of fact as to whether any of the dates provided by Plaintiff are accurate." Defs.' Obj. 7; Defs.' Resp. to Mot. to Remand 5 ("The sheer fact that Plaintiff alleges it did not know Mr. Wiszniewski was a limited partner until recently further establishes his alleged status as a limited partner is suspect and limited discovery is warranted." ). This arguments mischaracterizes Plaintiff's Motion to Remand in which Plaintiff's counsel states that "counsel for Surge," not Plaintiff, recently discovered that Mr. Wiszniewski is a limited partner of Surge LP while reviewing documents in connection with the New York action. Pl.'s Mot. to Remand ¶ 5 ("While reviewing documents in connection with a similar case recently filed in New York state court by the Wiszniewskis against Surge, *counsel for Surge* discovered that [Mr.] Wiszniewski is a limited partner of Surge [] LP and has been a limited partner thereof since October 15, 2018. Ex. 1, at ¶ 5."). In addition, this argument assumes, without any basis, that the information provided by Plaintiff is "suspect," and that Plaintiff and Plaintiff's counsel cannot be trusted to provide accurate information. This assertion amounts to rank speculation. There is no indication that Plaintiff or Plaintiff's counsel should have possessed or been aware of more facts or information regarding Mr. Wiszniewski's legal status as a limited partner of Surge LP than Defendants or Defendants' counsel. As the removing party with the burden of establishing subject matter jurisdiction, it was incumbent on Defendants, not Plaintiff, to allege in their Notice of Removal more than a *modicum* of facts to

establish that the asserted basis for diversity jurisdiction. To do any less would violate Federal Rule of Civil Procedure 11(b). If Defendants lacked sufficient factual information to support removal, they could have and should have undertaken additional, investigative steps (inquiry) to determine the citizenship of all parties prior to removal.

In addition, the court agrees with the magistrate judge that Defendants' reliance on this court's opinion in *Murchison* is misplaced, as the circumstances that justified jurisdictional discovery in that case are not present here. Further, while the magistrate judge noted that there was no evidence that the Partnership had not endorsed the Note, she was simply responding to Defendants' previously incorrect assertion that there was no evidence, or they were not aware of any evidence, demonstrating that the Partnership had endorsed the Note. Whether the Note was endorsed by the Partnership, Mr. Wiszniewski, or both, is of no moment here in light of the court's interpretation of section 2(d) of the Partnership Agreement and its determination that this provision is irrelevant to the analysis of whether and when Mr. Wiszniewski was admitted as Limited Partner of Surge LP. Even if it were relevant, the Note is signed by the Partnership and Mr. Wiszniewski, and neither the Note nor any other document submitted by the parties requires the Note to be signed or endorsed a second time when converted to LP Units.

Finally, Defendants have repeatedly contended that Plaintiff delayed by waiting several months to file its Motion to Remand, but they fail to explain why this supports their request for jurisdictional discovery or their opposition to Plaintiff's Motion to Remand. Unlike contentions regarding procedural deficiencies pertaining to removal, which can be waived if not asserted timely, lack of subject matter jurisdiction can be raised at anytime, even on appeal. Accordingly, this

argument, like Defendants' other objections, is without merit. The court, therefore, **overrules** Defendants' objections.

## IV.    Conclusion

Having considered the Notice of Removal, record, and Report, and having conducted a de novo review of that portion of the Report to which objection was made, the court concludes that the findings and conclusions of the magistrate judge are correct, and it **accepts, as modified and supplemented by this order,** those findings and conclusions. Defendants have failed to show that complete diversity of citizenship existed at the time of removal, as the evidence submitted by both parties establishes that Mr. Wiszniewski was a limited partner of Surge LP (Plaintiff's sole member) when the action was removed. As result, his New York citizenship is imputed to Surge LP and, in turn, to Plaintiff as a limited liability company, and there are New York citizens on both sides of the case, which destroys diversity. Accordingly, the court **overrules** Defendants' objections; **affirms** the denial of Defendants' Motion to Conduct Jurisdictional Discovery (Doc. 33); **grants** Plaintiff's Motion to Remand (Doc. 30); and **remands** this action to the 134th Judicial District Court, Dallas County, Texas, from which it was removed, for lack of subject matter jurisdiction. The clerk of the court **shall** effect the remand in accordance with the usual procedure.

**It is so ordered** this 13th day of April, 2020.

Sam A. Lindsay
United States District Judge